IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BERNARD MARIO CLARK,              §
TDCJ-CID NO.1487342,              §
Petitioner,                      §
v.                               §              CIVIL ACTION NO. H-10-3035
                                 §
RICK THALER,                     §
Respondent.                      §

<u>OPINION ON DISMISSAL</u>

Petitioner Bernard Mario Clark, an inmate incarcerated in the Texas Department

of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his felony conviction for

aggravated assault with a deadly weapon.  (Docket Entry No.1).  Respondent has filed a motion

for summary judgment (Docket Entry No.28).  Petitioner has filed a response to the motion

(Docket Entry No.33), a motion to withdraw unexhausted claims of prosecutorial misconduct

(Docket Entry No.34), and a Motion for Leave to Set Aside Judgment.  (Docket Entry No.39).

After considering all of the pleadings and the entire record, the Court will grant petitioner's

motion to withdraw unexhausted claims, deny petitioner's other motions, grant respondent's

motion for summary judgment, and dismiss this habeas petition.

<u>I. BACKGROUND AND PROCEDURAL HISTORY</u>

A jury in the 268th Criminal District Court of Fort Bend County, Texas, heard the

following evidence, as summarized in pertinent part by the Fourteenth Court of Appeals for the

State of Texas:

> On June 27, 2006, appellant and his wife, Era Koontz, began arguing.  The
> argument escalated and appellant violently grabbed the necklaces off Ms.
> Koontz's neck, causing pain and bleeding.  Appellant subsequently pulled

1

a firearm from his pants and pointed it at Ms. Koontz's head in a threatening manner.  With this, appellant told Ms. Koontz he had killed his cousin and asked her what she thought he thought about her.  Ms. Koontz, frightened, ran to her car and used the OnStar device to contact the police.  When the police arrived on the scene, they did an initial investigation, but were unable to locate the firearm.   Some time later, after monitoring appellant's phone conversation, Investigator Rachel Santana Brooks with the Fort Bend County Sheriff's Office, contacted Ms. Koontz and asked her to search the basket near her washing machine, and Ms. Koontz located the firearm used in the offense.   Thereafter, Investigator Brooks recovered the firearm from Ms. Koontz's residence.

During trial, Investigator Brooks testified she monitored appellant's phone calls made in the Fort Bend County Jail for a period of time.  Appellant made a number of calls to his ex-wife, Davina Wilson.[1]  In one of the calls, he told Ms. Wilson, "I need something out of there" and told her to "look in the basket by the washing machine."  In a subsequent call to Ms. Wilson, appellant stated, "I'm just saying as long as they ain't gotten it, they can't charge me with it.  That's what I'm trying to tell you."  In a third call to Ms. Wilson, appellant said, "you know what baby, I'm going to be real with you.  I'm glad I did what I did, but at the same time I'm kind of mad at myself for putting my hands on the bitch."  Furthermore, appellant made a phone call to his neighbor across the street, Serrod Robinson, stating, "I need you to get that thing, man ... [are you] going to take care of that."  Finally, appellant phoned a person named "Keekie" and said, "I ain't doing no trip, I ain't.  I kind of hate-I should have went on and did that whore like I wanted to do and blown her mother f* * * * * * brains out is what I should do.  Bitch asked for real, playing games with my freedom like this here."

*Clark v. State*, No.14-08-00025-CR, 2008 WL 5441877, *1 (Tex. App.—Houston [14th Dist.] 2008, pet ref'd) (not designated for publication); (full opinion at Docket Entry No.25-8, pages 44-52).  The jury convicted petitioner of aggravated assault with a deadly weapon in cause number 44740-A.  (Docket Entry No.25-18, page 136).  Following a punishment hearing, the jury assessed an enhanced punishment of forty-five years confinement in TDCJ-CID.  (Docket Entry No.25-24, page 25).

---

[1] Petitioner's ex-wife is also referred to in the record and pleadings as Davena Wilson, Davena Johnson, or Kitty.  For simplicity sake, the Court will refer to the ex-wife as Davena Wilson.

On direct appeal, petitioner complained of the following:  (1) the evidence was legally and factually insufficient to support his conviction; (2) the trial court erred when it denied his special requested jury charge; and (3) the State improperly withheld exculpatory evidence by not turning over tapes of all his phone calls made while in the Fort Bend County Jail.  *Clark*, 2008 WL 5441877 at *1.  The state intermediate appellate court affirmed the lower court's judgment of conviction.  *Id*. at *5.  Petitioner filed a petition for discretionary review seeking review of the appellate court's opinion on the exculpatory evidence ground (Docket Entry No.25-14), but the Texas Court of Criminal Appeals refused his petition.  *Clark  v. State*, P.D.R. No. 0750-09.

Petitioner sought state habeas relief from his conviction on the following grounds:

1.    He was denied the effective assistance of counsel;

2.    He is actually innocent;

3.    The State withheld exculpatory evidence in violation of *Brady v. Maryland*; and,

4.    The indictment was fatally defective.

(Docket Entry No. 25-8, pages 53-113).  The state district court, sitting as a habeas court, recommended that relief be denied and entered written findings.  (Docket Entry No.25-10, pages 13-21).  The Texas Court of Criminal Appeals denied the application without a written order on the findings of the trial court without a hearing.  (Docket Entry No.25-8, page 2).

Liberally construing petitioner's rambling pleadings, the Court finds that petitioner seeks federal habeas relief on the following grounds:

1.    He was denied the effective assistance of counsel at trial and on appeal;

2.    The State withheld exculpatory evidence;

3.      The indictment was fatally defective;

4.      Evidence of the gun used in the crime was inadmissible;

5.      His conviction was improperly enhanced by a state jail felony; and

6.      The prosecutor engaged in misconduct.

(Docket Entries No.1, No.4).

Respondent moves for summary judgment on grounds that petitioner has failed to meet his burden of proof under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his claims fail on the merits, and some of his claims are unexhausted and procedurally barred.  (Docket Entry No.28).

## II. DISCUSSION

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56.  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings."  *Montoya v. Johnson*, 226 F.3d

399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief.  *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in his petition for discretionary review and state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order.  As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).  Therefore, only those claims properly raised by petitioner in his petition for discretionary review and his state habeas application have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) holds that this Court shall not grant relief unless the state court's adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2).  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)).   Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers")).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  To be unreasonable, the state decision must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.*  Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas

rules. *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 2254 Cases in District Courts). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## A. Indictment

Petitioner contends that the indictment was fatally defective because it did not meet the requirements of Article 21.16 of the Texas Code of Criminal Procedure. (Docket Entries No.1, page 8; No.4, page 2; No.4-1, page 1). Petitioner claims the indictment did not identify the terms of the grand jury or the district court to which the grand jury was impaneled. (Docket Entries No.4-1, page 1; No.33, page 27).

The sufficiency of a state indictment is not a matter for federal habeas review unless the indictment is so deficient as to deprive the convicting court of jurisdiction. *Alexander v. McCotter,* 775 F.2d 595, 598 (5th Cir. 1985). If the question of validity or sufficiency of the

indictment is presented to the highest state court of appeals, then consideration of the issue is foreclosed in a federal habeas proceeding.  *McKay v. Collins*, 12 F.3d 66, 68-69 (5th Cir. 1994).

In this case, the state habeas court found that the indictment met the requisites of Article 21.02, and that petitioner failed to prove by a preponderance of the evidence that the indictment was fatally defective.  (Docket Entry No.25-10, pages 20, 21).  The Texas Court of Criminal Appeals relied on this finding in denying habeas relief.  Petitioner presents nothing to show that the state habeas courts' finding is contrary to federal law or objectively unreasonable.

### B. The Gun

Petitioner contends that the gun was inadmissible because the chain of custody was improper, *i.e.*, complainant found the gun after being in control of the crime scene for eight days.  (Docket Entries No.4, page 2, No.33, page 10).  The state habeas courts entered the following findings with respect to the admission of the gun:

> 25.   The weapon was found based on Applicant's statements to his ex-wife and family. . . . The victim did not know where the weapon was located and the six day delay between the offense and when the weapon was located by the victim and eight day delay to when the gun was recovered by Det. Brooks does not affect the chain of custody and was explained by Det. Brooks. . . .
>
> 26.   Based on the credible affidavit of Mr. Faden, the chain of custody regarding the weapon was sufficiently shown. . . .
>
> \*   \*   \*   \*   \*
>
> 70.   Applicant admits that proof of the chain of custody goes to the weight rather than the admissibility of the evidence. . . .
>
> 71.   Applicant does not plead a constitutional violation or prove his fifth ground for relief alleging an improper chain of custody.

(Docket Entry No.25-10, pages 17-18, 20) (citations to record omitted).  Citing *Ex parte Williams*, 65 S.W.3d 656, 657 (Tex. Crim. App. 2001), the state habeas courts concluded as a

matter of law that petitioner's claim regarding an improper chain of custody "is not cognizable on application for relief of habeas corpus."  (*Id.*, page 21).

Under Texas evidentiary rules, the State may lay an evidentiary predicate for the admissibility of a given piece of evidence in many ways, including establishing chain of custody or otherwise authenticating the proffered evidence.  *See* TEX. R. EVID. 901; *Simmons v. State*, 944 S.W.2d 11, 12 (Tex. App.-Tyler 1996, pet. ref'd).  "Absent evidence of tampering, an objection that the State has failed to establish a proper chain of custody goes to the weight of the evidence rather than to its admissibility."  *Simmons*, 944 S.W.2d at 12.

Petitioner proffers nothing to overcome the state habeas courts' findings and conclusions; therefore, he fails to meet his burden under the AEDPA as to this claim.

## C. Exculpatory Evidence

Petitioner contends the State withheld material and exculpatory evidence in violation his due process rights as stated in *Brady v. Maryland*, 373 U.S. 83 (1963).  (Docket Entries No.1, page 7; No.39, pages 1-2).  Specifically, petitioner complains the State erased a recorded telephone conversation, in which complainant allegedly admitted that she fabricated the charge against him.  (Docket Entries No.4, pages 6-8; No.33, page 9, pages 25-26).  He also complains that the State withheld complainant's criminal record and the benefits that she received for testifying.  (Docket Entry No.33, page 9).  He further complains that the State and his trial counsel withheld from him a copy of complainant's affidavit of non-prosecution.  (*Id.*).

To establish a *Brady* claim a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material.  *Wright v. Quarterman*, 470 F.3d 581, 591 (5th Cir. 2006).  Evidence is not "suppressed" if the petitioner either knew or should have known of the essential facts that would have permitted him to take advantage of any exculpatory evidence.

9

*West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996).  Evidence is material if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).  In short, a petitioner must show a "reasonable probability of a different result."  *Banks v. Dretke*, 540 U.S. 668, 699 (2004).

### 1. Taped Telephone Conversations

Petitioner contends that in June, July or August 2006, while he was detained in the Fort Bend County Jail, his ex-wife recorded a conversation between him and complainant, in which complainant admitted that she fabricated the assault charge against him.[2]  (Docket Entries No.1, page 12; No.25-20, page 5).  Petitioner claims that complainant lied about the charge because she believed that petitioner and his ex-wife had lied to her about an insurance claim.  (Docket Entries No.33, page 24, No.39, pages 2-3).  Petitioner complained of the same in his state habeas proceedings.  (Docket Entry No.25-8, page 60).

---

[2] Petitioner claims in the pending action that his ex-wife Davena Wilson listened to and recorded the following conversation with complainant:

    1.    Q.  Why did you tell them people, I pulled a gun on you and threatened you and your family when you know I didn't?

        Era Clark Response to Petitioner Clark:  You lied on me and I lied on you.  <u>A Player Got Played</u>.  Can we move on with our life?

    2.    Q:  Why you told them people I told you I was going to blow your brains out?

        Era Clark Response to Petitioner Clark:  I don't know where they came up with that from.

    3.    Q:  You know I didn't pull no gun on you?

        Era Clark Response to Petitioner Clark:  But you had one.

    4.    Q:  Why did you lie on me and tell them I had a gun and I put my hands on you?

        Era Clark Response to Petitioner Clark:  Well, you cheated on me and I lied on you.

(Docket Entries No.1, page 12) (emphasis in original)).

Before trial, petitioner and his trial counsel, Cary Faden ("Faden"), listened to all of the recorded phone calls that the State provided; a tape of the purported three-way call was not among those provided by the State.  (Docket Entry No.25-20, pages 5-6).  The prosecutor represented to Faden that recordings of other purported calls did not exist.  (*Id.*, page 5).  The prosecutor had contacted jail personnel about the purported recordings and was informed that if a copy of a recording was not requested, the recordings were dropped off the system within ninety days.  (*Id.*, page 6).  The state district judge ordered an investigation.  (*Id.*, pages 6-7).

At trial, the investigating officer, Detective Rachel Santana Brooks, testified that on July 3, 2006, as part of her investigation, she monitored recordings of telephone calls made by petitioner from jail on June 27, 2006.  (Docket Entry No.25-23, page 7).  She attested by stipulation of both parties to the content of those five calls.  (*Id.*, pages 2-8).

Shortly before the punishment hearing, Attorney Faden was informed that there were indeed other recordings of petitioner's telephone calls that were not downloaded and later erased.  (Docket Entry No.25-24, page 7).  At a hearing after the punishment phase of trial, Detective Brooks testified that on July 3, 2006, she listened to, and downloaded to a disk, five recordings of petitioner's phone calls that were made on June 27th.  (*Id.*, page 21).  She indicated that petitioner had made sixteen calls to complainant on the same day, but these calls were not accepted so there was nothing to record.  (*Id.*).  Brooks also testified that she had listened to other recorded phone conversations, determined that they were not relevant to the case, and did not download them to a disk; she did not know what happened to the recordings.  (*Id.*, pages 21-22).  She further testified that she did not hear a three-way phone conversation among petitioner, complainant, and his ex-wife, in which complainant allegedly admitted that she fabricated the charge against petitioner.  (*Id.*).  Brooks testified that she did not hear any kind of exculpatory or

relevant information that she did not download to a disk.  (*Id.*, page 22).  She indicated that she made the decision which calls to download between June 27, 2006, and July 3, 2006.  (*Id.*, page 24).

On direct appeal, the state district court found that there had been no testimony to show that there was any exculpatory item on the erased phone calls and that the detective's determination as to what to copy was within her investigatory function.  (*Id.*, page 25).  The state district court further stated that because defendant was a party to the phone calls, he could relate such conversations to counsel, which would lead counsel to investigate whether there was any exculpatory information.  (*Id.*).  The state district court found no prejudice to the defendant. (*Id.*).

On direct appeal, petitioner complained that the State improperly withheld exculpatory evidence by not turning over tapes of all the phone calls petitioner made while in jail.  *Clark v. State*, 2008 WL 5441877 at *5 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). The state appellate courts found that petitioner failed to show that undisclosed information was material.  *Id.*  The Texas Court of Criminal Appeals refused his petition for discretionary review.

Petitioner sought state habeas relief for the State's failure to provide the allegedly exculpatory phone call that petitioner's ex-wife had recorded, but he did not produce her recording or an affidavit from her attesting to the same.  (Docket Entry No.25-10, page 19).  The state habeas courts found that petitioner asserted at a pretrial hearing that complainant admitted that "she did all of this out of jealousy,"[3] but in his state habeas application, petitioner indicated

---

[3] Petitioner testified at a pretrial hearing that complainant admitted "on the phone that she did all of this out of jealousy."  (Docket Entry No.25-20, page 5).

that complainant lied because he had lied to her.[4]   (*Id*. at 20).   The state habeas court found that petitioner did not present the latter statement to the state courts and therefore, failed to prove such statement or that he suffered a *Brady* violation.   (*Id.*).   The state habeas court concluded as a matter of law that petitioner failed to prove the State withheld exculpatory evidence.   (*Id.*, page 21).   The Texas Court of Criminal Appeals denied state habeas relief on this finding.

Petitioner has not demonstrated in the pending action that the state courts' adjudication of this claim was contrary to or an unreasonable application of *Brady* or was based on an unreasonable determination of the facts in light of the evidence presented.   28 U.S.C. § 2254(d).   Petitioner proffers no facts or evidence that would cause the court to question the state courts' resolution of this claim; therefore, federal habeas relief is not warranted.

### 2. Complainant's Criminal Record and Affidavit of Non-Prosecution

Petitioner complains that the State did not disclose complainant's criminal record or her affidavit of non-prosecution but the record shows that the State disclosed both.   On September 19, 2007, months before trial, the prosecutor filed "State's Notice/Disclosure Pursuant to <u>Brady v. Maryland</u>" (Docket Entry No.25-18, page 106), wherein the State disclosed complainant's criminal history from 1961 to 1991, and indicated that she had executed an affidavit of non-prosecution.   (*Id*.).   The record does not show, and petitioner presents nothing to show, that complainant received any benefit for testifying.   Accordingly, he fails to show any entitlement to federal habeas relief under the AEDPA with respect to these claims.

---

[4] Petitioner alleged in state habeas proceedings that complainant said, "You lied on me and I lied on you.  A player got played.  Can we move on with our life?"  (Docket Entry No.25-8, page 60).

### D. Actual Innocence

Petitioner claims that he is actually innocent of aggravated assault based on the prosecutor withholding exculpatory evidence, *i.e.*, the taped phone calls wherein complainant allegedly recanted her earlier statements, and complainant's non-prosecution affidavit "clearly substantiates that nothing ever happened." (Docket Entries No.1, page 7; No.4, pages 2, 10-11; No.33, pages 19-21). Petitioner contends that the jury did not have the opportunity to consider his innocence because the jury was not allowed to view such evidence at his trial. (Docket Entry No.4, page 2). Petitioner contends his actual innocence claim is cognizable under *Herrera v. Collins*, 506 U.S. 390 (1993) and newly discovered evidence of the deleted phone conversation establishes his innocence. (*Id.*, page 10).

Petitioner asserted the same actual innocence claim in state habeas proceedings. (Docket Entry No.25-8, page 59). The state habeas courts found the following with respect to such claim:

> 60. Based on the reporter's record and the stipulation of Applicant's statements contained in recordings of his phone calls to his ex-wife, family, and friends from the jail, which stipulation Applicant personally approved in an agreement with the State not to put in evidence the entirety of the phone calls, Applicant is not actually innocent. . . .
>
> 61. Applicant fails to prove by a preponderance of the evidence his second ground for relief alleging actual innocence.

(Docket Entry No.25-10, page 19) (citation to record omitted).

In federal habeas proceedings, two avenues exist for asserting an actual innocence claim: a "gateway" claim under *Schlup v. Delo*, 513 U.S. 298, 319–322 (1995), and a "freestanding" claim, as discussed in *Herrera*, 506 U.S. at 417. As a general rule, claims forfeited under state law may support federal habeas relief only if a petitioner demonstrates cause

for the default and prejudice from the asserted error.  *See House v. Bell*, 547 U.S. 518, 536 (2006).  However, in *Schlup*, the Supreme Court recognized a "miscarriage of justice" exception to the default principle and held that prisoners asserting actual innocence as a gateway to defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327.  A successful gateway claim under *Schlup* does nothing more than allow an otherwise procedurally-barred claim to be reviewed by the federal court; it does not act to grant habeas relief.  By asserting an actual innocence claim that has been considered and rejected by the state habeas court, petitioner does not raise a *Schlup* gateway claim.

Rather, petitioner raises a "freestanding" claim of actual innocence based on the deleted tape recordings of his phone conversations and the affidavit of non-prosecution.  In *Herrera*, the Supreme Court assumed without deciding that, "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."  506 U.S. at 417.  In later revisiting the issue of actual innocence, the Supreme Court declined to resolve the question of whether freestanding actual innocence claims are to be recognized in federal habeas proceedings.  *House*, 547 U.S. at 555.  The Fifth Circuit, however, has reaffirmed its refusal to recognize a freestanding actual innocence claim in federal habeas proceedings.  *Cantu v. Thaler*, 632 F.3d 157, 167-68 (5th Cir. 2011).

Accordingly, petitioner's claim that federal habeas relief is warranted based the evidence allegedly withheld from the jury must be rejected because a freestanding claim of actual innocence is not a cognizable claim for federal habeas relief.

<u>E. Enhancement of Sentence</u>

Petitioner contends that his conviction was improperly enhanced by a state jail felony and two non-violent crimes.  (Docket Entries No.4, page 1, No.33, page 10).  Respondent maintains that such claim is unexhausted and procedurally barred because it was not presented to the Texas Court of Criminal Appeals.  (Docket Entry No.28, page 28).

Under 28 U.S.C. § 2254, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief."  *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995).  The doctrine of exhaustion, codified as amended at 28 U.S.C. § 2254(b)(1) and (c), reflects a policy of federal/state comity.  *Coleman v. Thompson*, 501 U.S. 722 (1991).  Under this framework, exhaustion means that the petitioner must have presented all of his habeas corpus claims fairly to the state's highest court before he may bring them to federal court.  *See Castille v. Peoples*, 489 U.S. 346 (1989); *Fisher v. State*, 169 F.3d 295, 302 (5th Cir. 1999).  A claim is exhausted when a habeas petitioner provides the highest state court with a "'fair opportunity to pass upon the claim,' which in turn requires that the applicant 'present his claims before the state courts in a procedurally proper manner according to the rules of the state courts.'"  *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999) (quoting *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988)).  The substance of a federal claim is deemed "fairly presented" in state court for purposes of the exhaustion doctrine only if the petitioner relies upon identical facts and legal theories in both of the state court proceeding and the action for federal habeas relief.  *Picard v. Connor*, 404 U.S. 270, 275-75 (1971); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

Petitioner did not complain in his state application or on direct appeal that his sentence was illegally enhanced.  Ordinarily, a federal habeas petition that contains unexhausted claims is dismissed, allowing the petitioner to return to the state forum to present his

unexhausted claims.  *Rose v. Lundy*, 455 U.S. 509 (1982).  Respondent, however, contends such a result in this case would be futile because petitioner's unexhausted claims would be procedurally barred as an abuse of the writ under Texas law.  (Docket Entry No.28).

A procedural bar for federal habeas review also occurs if the court, to which a petitioner must present his claims to satisfy the exhaustion requirement, would now find the unexhausted claims procedurally barred.  *Coleman,* 501 U.S. at 735 n.1.  Texas prohibits successive writs challenging the same conviction except in narrow circumstances.  TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a) (Vernon 2005).  The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly.  *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (per curiam).

Petitioner's federal habeas petition does not contain specific facts to establish the illegal enhancement in the pending habeas action could not have been raised on direct appeal or in his state habeas petition or that he is actually innocent.  Therefore, petitioner's unexhausted claim does not fit within the exceptions to the successive writ statute and would be procedurally defaulted in state court.  *Coleman*, 501 U.S. at 735 n.1.  Such a bar precludes this Court from reviewing petitioner's claim absent a showing of cause for the default and actual prejudice attributable to the default.  *Id.* at 750.

Petitioner has been given notice through respondent's motion for summary judgment that the Court would consider a dismissal of claims under the procedural default doctrine and has been given an opportunity to respond with any argument he may have opposing dismissal in a response to the motion for summary judgment.  *See Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998).  Petitioner, however, fails to address the default, the cause of the default, or prejudice resulting from the default in his responses to the motion for summary

judgment.  (Docket Entry No.33).  Nor has he raised an actual innocence claim under *Schlup v. Delo*, 513 U.S. 298 (1995).  Accordingly, the Court will dismiss as procedurally barred petitioner's illegal enhancement claim.

### F. Prosecutorial Misconduct

Petitioner filed numerous allegations of prosecutorial misconduct in his memorandum in support of his habeas petition.  (Docket Entry No.4, page 15).  After the State filed its motion for summary judgment, petitioner moved to dismiss all claims of prosecutorial misconduct because he had not presented such claims to the state courts and therefore, had not exhausted such claims.  (Docket Entry No.34, pages 1-2).  In light of such concession, the Court will grant petitioner leave to withdraw all claims of prosecutorial misconduct.

### G. Ineffective Assistance of Counsel

Petitioner complains that his trial counsel rendered constitutionally ineffective assistance of counsel during trial and on appeal.  (Docket Entries No.1, No.4, No.33).  The state district court, sitting as a habeas court, ordered trial counsel to file an affidavit addressing specific grounds and his representation.  (Docket Entry No.25-10, page 15).  Trial counsel submitted his affidavit and attached documents in support.  (Docket Entries No.25-9, pages 53-117; No.25-10, pages 1-12).  The state habeas court entered findings of fact and conclusions of law that Attorney Cary Faden was well-known to the court as a competent, credible, zealous, and professional attorney.  (Docket Entry No.25-10, page 15).  The state habeas court also made specific findings as to each ground petitioner alleged against Attorney Faden.  The state habeas court concluded that Faden rendered reasonably effective assistance of counsel.  (*Id.*, page 21).  The Texas Court of Criminal Appeals denied state habeas relief on such findings.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692).  The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness.  *Ogan*, 297 F.3d at 360.  Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy."  *West v. Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993).  Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90.  A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id.* Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001). Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decisions on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## 1. Pretrial Performance

### a. Investigation

Petitioner claims that his trial counsel failed to conduct any pretrial discovery and that counsel stated the same in his letter to the prosecutor on June 27, 2007. (Docket Entries No.1, page 10, No.4, pages 2-4, 7). Petitioner specifically complains that Faden failed to investigate the alleged exculpatory telephone conversation that he had with complainant. (Docket Entries No.4, page 4, No.33, page 5). He complains that counsel relied solely on the prosecutor's files and elected not to interview complainant and obtain her affidavit of non-prosecution. (Docket Entry No.33, pages 4-5). He further complains that counsel did not obtain his own statement of the case. (*Id.*, page 6).

Counsel has a duty to conduct a reasonable pretrial investigation into the facts and pertinent law of a criminal case or to make a reasonable decision that makes particular investigations unnecessary.  *See Strickland*, 466 U.S. at 691.  Attorney Faden attested in state habeas proceedings that the case had been pending nearly a year before his appointment; therefore, many of the tapes of petitioner's telephone conversations from jail had been erased or deleted months before Faden's appointment.  (Docket Entry No.25-9., page 55).  Faden further attested as follows, in pertinent part:

> Upon my appointment, out of an abundance of caution[,] the State photocopied the entire State's file for me which was provided to me and copies of photographs and all jail telephone recordings that the State had in their possession were provided to me.  Additionally, I did not believe the victim's versions of events and I did not believe that she intended to appear at any court proceedings or trial, thus I subpoenaed all relevant witnesses requested by Bernard, and on at least one occasion I subpoenaed the victim for a Court hearing on this matter, and I had multiple telephone conversations with the victim concerning her testimony and her version of events.
>
> I met with Bernard at the Fort Bend County Jail on many occasions preparing this case for trial and at those meetings we listened to any and all jail telephone recordings of Bernard's jail telephone calls that were available for me that had not been previously deleted or erased.  I met with Bernard at the Fort Bend County Jail on [eight specific dates]; all in preparation for the jury trial of this matter.  There were additional dates that I met with Bernard at the Fort Bend County jail preparing this case for a jury trial.
>
> \*   \*   \*   \*   \*
>
> I attach a copy of my letter to Bernard of May 13, 2008, wherein all jail telephone calls that were available to me at that time were provided to me, also I stated that I was to rely on Ms. Davidoff's comprehensive Motion for Discovery that the State did comply with to Ms. Davidoff and again to me in its entirety.

(*Id.*, pages 54-55).  The state habeas courts found that based on the court's file and Faden's affidavit, Faden "fully investigated this case and did not solely rely on the files of the district

attorney."   (Docket Entry No.25-10, page 15).   The state habeas courts further found the following, in pertinent part:

> 19.     Based on the reporter's record, and the credible affidavit of Mr. Faden, any telephone conversation with the victim was not available at trial. . . .
>
> 20.     Mr. Faden sufficiently investigated the facts of this case, and Applicant fails to prove his allegation of deficient performance in the alleged failure to investigate.
>
> 24.     Mr. Faden conducted sufficient legal research in this case, and Applicant fails to prove his allegation of deficient performance in an alleged failure to conduct legal research and file motions.

(*Id.*, pages 15-16).   Moreover, the record of the guilt-innocence portion of trial reflects that Attorney Faden was familiar with the facts at issue in this case and vigorously cross-examined each of the State's witnesses with respect to the same.  (Docket Entries No.25-21, No.25-23).

Petitioner fails to rebut the state habeas courts's findings and fails to show that he has suffered any prejudice from these alleged deficiencies.  Accordingly, he fails to meet his burden under the AEDPA with respect to these claims.

### b. Motions

A failure by counsel to file a motion does not *per se* constitute ineffective assistance of counsel.  *See Kimmelman v. Morrison*, 477 U.S. 365, 383-84 (1986).   A determination of ineffectiveness "depends on whether either a suppression motion or an objection would have been granted or sustained had it been made."  *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987).  Moreover, "the filing of pre-trial motions 'falls squarely within the ambit of trial strategy.'"   *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985) (quoting *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)).

Petitioner complains that Attorney Faden failed to file a motion in *limine* but he states no grounds for filing such motion.  (Docket Entries No.4, page 2, No.33, page 8).  The record reflects that Faden filed a Motion *in Limine* Concerning Extraneous Offenses on June 28, 2007.  (Docket Entry No.25-18, pages 67-69).  Petitioner's claim is conclusory and therefore, subject to dismissal.

Petitioner also complains that Faden failed to file a motion to suppress all the evidence because the weapon was illegally obtained by police from complainant who lied about the gun; he also claims that the evidence does not establish that the gun recovered belonged to him.  (Docket Entries No.4, page 10; No.33, page 8).  Attorney Faden attested in state habeas proceedings that he did not move to suppress any evidence "as it was our trial strategy to show that . . . that the victim was in possession of said firearm for several days prior to law enforcement finding it, and that Detective Brooks had any particular training in her position." (Docket Entry No.25-9, page 54).  The state habeas courts' entered the following findings with respect to Faden's motions:

> 21.  Based on the Court's file, previous counsel Marcia Davidoff filed at least six detailed motions including a motion for discovery before she withdrew from the case. . . .
>
> 22.  Based on the Court's file, Mr. Faden supplemented the motions of Ms. Davidoff with motions that reflect Mr. Faden had a firm grasp of the facts of this case and relevant law.
>
> 23.  Based on Mr. Faden's credible affidavit, no motion to suppress the weapon was filed because it was part of his trial strategy to show Applicant's innocence, "[p]articularly, that the victim was in possession of said firearm for several days prior to law enforcement finding it." . . .

(Docket Entry No.25-10, page 15).  The ownership of the gun was not at issue in this case because, as the state habeas courts found, "the weapon was discovered based on Applicant's

statements to his ex-wife and family." (*Id.*, page 16).  Petitioner proffers nothing to overcome the presumption that the decision to forego a suppression motion was strategic and nothing to overcome the state courts's findings.  *Strickland*, 466 U.S. at 690.

Finally, petitioner complains that trial counsel Faden failed to challenge the indictment on grounds that the indictment was fatally defective.  (Docket Entries No.1, pages 8, 11; No.33, page 7).  Faden attested in state habeas proceedings that he "did not file a motion at pre-trial to suppress the present indictment, nor objected to the alleged fatally defective indictment nor [sic] a motion to quash because in my opinion, there was nothing wrong with the indictment." (*Id.*, page 54).  The state habeas courts found Faden's attestations credible and noted that based on the Court's file, Faden had moved to quash the original indictment for Engaging in Organized Criminal Activity and the State had dismissed such indictment and re-indicted the case in response.  (Docket Entry No.25-10, page 16).  The state habeas courts also found "the indictment properly alleged the offense of aggravated assault" and that petitioner failed to prove that Faden's performance was deficient by not moving to quash this indictment. (*Id.*).  Because the indictment was found by the Texas courts to be valid, petitioner cannot show that he was prejudiced by Faden's failure to challenge the indictment.

### 2. Trial

Petitioner contends that Attorney Faden's performance was deficient and prejudicial during the trial because Faden did not object to (a) the admission of the gun used in the offense; (b) complainant's testimony; (c) Detective Brooks's training and qualifications, her use of the word "thing," and his own incriminatory statements; and (d) prosecutorial misconduct. He also contends that Faden did not introduce complainant's non-prosecution affidavit, her

letters, cards, pictures, records of her visits, and the money she gave to petitioner.  He further contends that Faden conspired with the prosecution.  (Docket Entries No.1, No.4, No.33).

a. Admission of the Gun

Petitioner complains that his trial counsel's performance was deficient because he failed to object to the admission of the gun used in the offense.  (Docket Entries No.1, pages 10, 13; No.4, pages 4, 6, 8, 12, No.4-1, page 3; No.33, pages 3-4).  Under *Strickland*, petitioner must establish both that his attorney "acted objectively unreasonably in failing to object and that he was prejudiced by the failure."  *Vuong v. Scott,* 62 F.3d 673, 684 (5th Cir. 1995).

Petitioner contends that the gun was inadmissible because the chain of custody was improper, *i.e.*, complainant found the gun after being in control of the crime scene for eight days.  He faults his attorney for failing to object to the State's failure to prove the chain of custody and for counsel's failure to establish an improper chain of custody.  Petitioner further faults Faden for failing to object on grounds that the gun was illegally obtained, the crime scene was tainted because complainant lacked the legal training to handle a crime scene, and that complainant fabricated her testimony about finding the gun.  (Docket Entries No.1, pages 10, 13; No.4, pages 4, 6, 8, 12, No.4-1, page 3; No.33, pages 3-4).

Faden attested by affidavit in state habeas proceedings that the chain of custody was met, that he was unaware of any illegally obtained or tampered evidence, and that he was unaware that complainant's testimony was perjured; therefore, his performance was not deficient for failing to object to the same.  (Docket Entry No.25-9, page 54).  The state habeas courts entered the following findings with respect to counsel's performance and the admission of the gun:

25

27.     Applicant fails to prove his allegation of deficient performance in the alleged failure to establish the chain of custody in this case.

*   *   *   *   *

37.     Applicant does not explain in his application how the victim tampered with or fabricated the weapon used and exhibited in this case.  Applicant admitted in a phone call from the jail, "I should have went on and did that whore like I wanted to do and blown her mother fucking brains out is what I should did.". . .  Applicant also disclosed the location of the gun as being in a basket by the washing machine . . . , exactly where it was located. . . .

38.     Based on his credible affidavit, Mr. Faden's trial strategy included showing "that the victim was in possession of said firearm for several days prior to law enforcement finding it, and that Detective Brooks had [no] particular training in her position" to show Applicant's innocence. . . . Mr. Faden states, "I was not ineffective in [not] objecting to the victim's perjured testimony as to the fact that I have knowledge that her testimony was perjured, or that she tampered with any evidence." . . .

39.     The evidence did not show that the victim had fabricated or tampered with the weapon used in this case, Applicant admitted he used a weapon in this case, and the alleged failure to object was part of counsel's trial strategy, Applicant fails to prove his allegation of deficient performance in failing to object to the victim's alleged perjury.

*   *   *   *   *

44.     Applicant does not state in what way the victim needed legal training to find a weapon she was not aware [it] was hidden in the bottom of a laundry basket next to the washing machine.

45.     Applicant fails to prove his allegation of deficient performance in trial counsel's alleged failure to object to the victim's lack of legal training to hold a crime scene or recover the weapon.

(Docket Entry No.25-10, pages 17-18) (citations to record omitted).  The record supports that state habeas courts' findings.[5]  (Docket Entries No.25-21, No.25-23).

---

[5] Petitioner's alleged "proof" that Faden lied under oath in his affidavit regarding his failure to object is speculative and conclusory.  (Docket Entry No.33, pages 3-4).

Petitioner, furthermore, has not carried his burden under *Strickland's* second prong to show that he was prejudiced by his counsel's actions. Petitioner proffers nothing to show that the state district court would have sustained any objection to the admission of the gun. Prejudice cannot be established with mere speculation or conjecture. *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Accordingly, petitioner fails to meet his burden under the AEDPA with respect to his counsel's failure to object to the admission of the gun and to establish an improper chain of custody.

### b. Complainant's Testimony

Petitioner complains that Attorney Faden did not investigate or object to complainant's perjured testimony at trial that she did not show Officer Craven a photograph of a firearm with petitioner's identification; moreover, he did not introduce her affidavit into evidence, in which she stated that she showed such photograph to the officer so that the officer would know the type of gun petitioner had used. (Docket Entries No.33, page 6). Petitioner also complains that Faden intentionally withheld complainant's non-prosecution affidavit, in which she indicated that she did not want to prosecute this case. (Docket Entries No.4, pages 7, 10; 11, 12; No.33, page 7). He further complains that Faden did not introduce letters, cards, photographs, and money from complainant to petitioner while he was in jail. (Docket Entries No.1, page 10; No.33, page 8).

The record reflects that Faden vigorously cross-examined complainant about several inconsistencies in her testimony regarding petitioner's retrieval of the gun from the safe, the officers' search for the gun, and the information she gave the officers about the gun and its location. (Docket Entry No.25-21, pages 19, 22, 23, 25). Although Faden attested in state proceedings that he did not believe complainant's version of events, neither complainant's

inconsistent statements nor Faden's belief regarding her credibility constitute proof that complainant committed perjury.  Moreover, the record does not reflect that her inconsistent statements were lies or that Faden had proof that complainant was lying.  "Conflicting or inconsistent testimony is insufficient to establish perjury."  *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001).

The record shows that Faden did elicit testimony that complainant showed the investigating officers a picture of what the gun looked like.  (Docket Entry No.25-21, page 22).  He later elicited testimony that complainant and petitioner had taken photographs of the firearm and he questioned her as to whether she had taken a photograph of the gun to use against petitioner.  (*Id.*, pages 23-24).

The record further shows that evidence of complainant's desire to drop the charges against petitioner was admitted.  On redirect, complainant testified that she decided that she did not want to go forward with the criminal case after talking with petitioner on the phone soon after the incident.  She explained that wanted to drop the charges, not because petitioner did not commit the offense, but because she realized how the prosecution would affect his life.  (*Id.*, page 23).

The state habeas court found that petitioner did not "attach to his application letters, greeting cards, or proof of funds placed in his account by the victim and fails to prove such exist."[6]  (Docket Entry No.25-10, page 20).  Petitioner has not submitted proof of the same in this habeas action.  Moreover, petitioner proffers nothing to show how he was prejudiced by

---

[6] Copies of petitioner's jail records submitted as exhibits by Attorney Faden in state habeas proceedings show that complainant deposited money in petitioner's jail account on at least two occasions.  (Docket Entry No.25-9, pages 97-98).

Faden's failure to introduce such records, particularly, in light of complainant's testimony that she did not want to pursue the criminal charges.

Based on the foregoing, the Court finds that petitioner has not met his burden under the AEDPA to rebut the state habeas findings with respect to the effectiveness of his trial counsel or the underlying issues.

### c. Detective Brooks

Petitioner next complains that Faden was ineffective because he did not object to (1) Detective Brooks's training and qualifications; (2) her use of the word "thing," in reference to the gun; and (3) his own incriminating statements to which she testified.  (Docket Entries No.1, page 10; No.4, page 5; No.4-1, page 3; No.33, pages 7, 8-9).

The record reflects no evidence that before or during the guilt-innocence portion of trial that Faden or the state district judge was aware that Detective Brooks had listened to other taped phone conversations but downloaded only five to a disk or that she alone had determined that the other taped conversations were not relevant to the case.  (Docket Entries No.25-20, pages 5-7; No.25-23, pages 2-5).  At the conclusion of the guilt-innocence phase of trial, Attorney Faden informed the state district court that he had learned of the deleted tapes at the end of the previous day.  (Docket Entry No.25-24, page 8).  After the punishment hearing, Faden made an offer of proof, in which Detective Brooks testified that she had listened to numerous recordings of petitioner's phone calls but copied only five.  (Docket Entry No.25-24, pages 21-24).  At that time, Faden questioned Brooks about her legal training and qualifications to determine whether the tape recordings contained exculpatory evidence.[7]  (*Id*., page 23).

---

[7] Attorney Faden then questioned whether she had any legal training and whether she knew what constitutes exculpatory evidence.  (Docket Entry No.25-24, page 23).  Brooks indicated her understanding but insisted that the content of the other calls that she listened to had nothing to do with the case.  (*Id*.).

The state habeas court found that petitioner "failed to prove his allegation of deficient performance in trial counsel's alleged failure to object to Det. Brooks' lack of legal training." (Docket Entry No.25-10, page 18). The state habeas courts further found that Attorney Faden's trial strategy included a showing that Detective Brooks had no particular training in her position and that he preserved such issue for the appellate record. (*Id.*, page 17). The record supports such finding and petitioner presents nothing to rebut it.

With respect to Detective Brooks's testimony during the guilt-innocence phase of trial, the record shows that petitioner agreed to allow Brooks to testify to the incriminating statements she heard on the tapes of his telephone conversations, which included his use of the word, "thing." Before she testified, the prosecutor and trial counsel Faden informed the state district judge of their agreement to proffer specific statements made by defendant in phone conversations with family and friends while he was in jail, which were recorded and reviewed by Detective Brooks. (Docket Entry No.25-23, pages 2-3). Attorney Faden explained to the state

---

Attorney Faden argued to the court as follows, in pertinent part:

> The purpose of this proffer was to show the Court and for the record, that a detective who listened to multiple telephone calls, in a week long period, made the independent decision on which ones to copy and which ones not to copy. And made an independent decision without any legal training what would be inculpatory or exculpatory to the defendant.
>
> And that decision made by Detective Brooks alone, in my opinion, prejudices Mr. Clark's case. And that's the purpose of this clarification and the proffer.
>
> \*   \*   \*   \*   \*
>
> It prejudices the case because I, as Mr. Clark's attorney, have never had the opportunity to listen to any phone calls other than the five phone calls that were produced during discovery in this case.
>
> \*   \*   \*   \*   \*
>
> I have a list here of telephone calls where there's a great deal more than five phone calls that were made between that period that are now since erased and giving the information I have it prejudices my defense in this case.

(*Id.*, page 24).

district judge that in lieu of playing the taped recordings of the phone conversations, Detective Brooks would testify that she listened to five phone calls between petitioner and other persons and would testify as to the substance of such calls.  (*Id.*, page 3).  The State proffered the specific statements to which Brooks would testify and agreed not to put into evidence during the guilt-innocence phase of trial, the entirety of any recorded jail conversation.  (*Id.*, page 4).  Petitioner indicated to the state district judge that he did not have an objection to the admission of such statements.  (*Id.*).  Faden explained that part of the defense strategy was to "eliminate the potential dangers of playing, in essence, six plus audio tape jail phone calls, which have many perils and dangerous to them by playing them, if the State can establish the predicate for their admissibility."  (*Id.*).  He indicated that Detective Brooks would not mention that the phone calls came from the jail.  (*Id.*).  The stipulation was admitted into evidence.[8]  (*Id.*, page 5).

The record does not support petitioner's allegation that Attorney Faden's representation was deficient or prejudicial with respect to his examination of Detective Brooks at trial.  Co-counsel Diaz cross-examined Detective Brooks during the guilt-innocence phase of trial.[9]  (Docket Entry No.25-24, pages 11-19).  The state habeas courts found that "co-counsel vigorously cross-examined Det. Brooks on alleged deficiencies in her investigation and discrepancies in what the victim told her and the victim's testimony."  (Docket Entry No.25-10, pages 17-18).  Petitioner proffers nothing to overcome the state habeas courts' findings.

---

[8] (Docket Entry No.25-8, page 142).

[9] Brooks testified, in part, that she listened to a recording of a telephone conversation that petitioner made on June 27, 2006, in which he told his ex-wife Davena "Kitty" Wilson, "I need something out of there.  That thing is in there.  I need to get it out of there.  And he tells her to look in the basket by the washing machine."  (Docket Entry No.25-23, page 8).  She also testified that on the same day, petitioner stated to Serrod Robinson, "I need you to get that thing, man."  (*Id.*).  She further testified that she understood petitioner's reference to that "thing" to mean the gun; consequently, she contacted complainant to have her search the area and recover the weapon.  (*Id.*).  On re-cross examination defense co-counsel Michael Diaz elicited testimony from Brooks that she was basically speculating about the "thing" petitioner was referring to.  (*Id.*, page 17).  He further elicited testimony that petitioner did not mention any type of firearm or gun in his statements.  (*Id.*).

d. Exculpatory Evidence

With respect to the deleted recordings, petitioner complains that trial counsel Faden was ineffective because he did not (1) file a motion for mistrial on grounds that the prosecution withheld evidence of the exculpatory phone call; (2) move for a continuance upon learning about the withheld phone call; and, (3) investigate, explain, and introduce the exculpatory phone call at trial and on appeal. (Docket Entries No.1, page 12; No.4, pages 5, 6, 7, 13; No.4-1, pages 3, 4, 5; No.33, pages 4, 5, 16, 17, 24, 25).

The record shows that Attorney Faden was appointed counsel on April 13, 2007, and therefore, did not represent petitioner at the time the recorded telephone calls were erased by personnel at the Fort Bend County Jail in 2006. (Docket Entries No.25-20, page 7; No.25-9, page 53). Faden made application to subpoena Davena Wilson on November 13, 2007, for the December 4, 2007, trial. (Docket Entry No.25-9, page 57). She did not appear at trial. At a pre-trial hearing on December 4, 2007, Faden informed the state district judge that that petitioner had informed him of other calls that should have been recorded and the State's representation that the copies did not exist. (Docket Entry No.25-20, page 5). The state district court ordered an investigation into the matter and directed that the appropriate person testify to the court about what he recalled. (*Id.*, page 7).

Faden was not aware during the guilt-innocence phase of trial that Detective Brooks had listened to other taped phone conversations and determined that they were not relevant to the case. (Docket Entries No.25-20, pages 5-7; No.25-23, pages 2-5). On the second day of the punishment phase of trial, Attorney Faden informed the state district court that he had learned of the same at the end of the previous day. (Docket Entry No.25-24, pages 6-8). Faden argued, "In Mr. Clark's defense, I never got to listen to whatever exculpatory tapes that may

have been provided or may have existed prior to trial, in his defense." (*Id*., page 7).  The state district judge opined that if the tapes were prejudicial that neither party was prejudiced because the tapes were not available to either party.  (*Id*.).

After the punishment hearing, Attorney Faden made an offer of proof.  Detective Brooks testified that she listened to other taped phone calls that were made later but did not copy them because they were not relevant; Faden questioned whether she had any legal training and whether she knew what constitutes exculpatory evidence.  (Docket Entry No.25-24, pages 22-23).  Brooks indicated her understanding of the term and insisted that the content of the other calls that she listened to had nothing to do with the case.  (*Id*., page 23).

The state district court found no evidence of a *Brady* violation by the State and no prejudice to defendant.   (*Id*., page 25).   Faden complained on direct appeal that the State withheld exculpatory evidence with respect to the deleted tapes.   *Clark v. State*, 2008 WL 5441877 at * 4-5.  The state appellate court found that petitioner failed to meet his burden under *Brady* and overruled the ground.  *Id.* at * 5.

Attorney Faden attested to his representation in state habeas proceedings.[10]  The state habeas courts found that Faden had raised missing tape issue on direct appeal, and that

---

[10]  Faden attested that he met with petitioner numerous times at the jail and listened with petitioner to all jail telephone recordings that were available to him and that had not been previously deleted or erased.  (Docket Entry No.25-9, page 53).  He also attested that "many if not all, appellate issues were preserved for appellate review, specifically, the jail telephone calls issue that Bernard continues to represent that will prove his innocence was preserved for appellate review."  (*Id*., page 54).  Faden further attested to the following, in pertinent part:

> Prior to the jury trial, during trial and after the guilt innocence stage of this trial, I raised issues with the fact that potential exculpatory evidence was denied Bernard, and that Bernard was denied the ability to present this exculpatory evidence at his trial before the jury. . . . All of the complained of jail telephone calls were either deleted or erased months prior to my appointment. . . .

> The purpose of that proffer was to show the Court and for the record, that a detective who listened to multiple telephone calls, in a week long period, made the independent decision on which ones to copy and which ones not to copy.  And made an independent decision

petitioner failed to prove that Faden's performance was deficient.   (Docket Entry No.25-10, pages 18, 19).

Petitioner fails to set forth a basis upon which a continuance was required.   The tapes were deleted months before Faden was appointed counsel.   In three separate hearings during the course of the trial, Faden complained to the state district court about the deleted recordings, and the state district judge ordered an investigation.

Petitioner also fails to show that Faden did not investigate or explain the exculpatory calls.   Petitioner testified at a pretrial hearing that he and Faden listened to all the recordings provided to Faden; he also testified to his understanding that one particular recorded call was missing and his understanding about the jail policy of deleting calls.   (Docket Entry No.25-25, page 5).   Petitioner agreed with Faden on the record that the tapes, if exculpatory, were erased before Faden began his representation.   (*Id.*, page 7).

Petitioner further fails to show that Faden's performance was deficient because he did not present the purported details of the allegedly deleted phone call to the jury.   The record shows that Faden had no evidence that the purported call existed.   Moreover, Faden was not aware until the punishment phase of trial that Detective Brooks had listened to other taped calls that she did not download.   By agreement, Brooks restricted her testimony during the guilt-innocence phase of trial to specific incriminating statements made by petitioner in lieu of playing

---

without any legal training what would be inculpatory or exculpatory to Bernard.   And that decision made by Detective Brooks alone, in my opinion, prejudiced Bernard's case.

(*Id.*, pages 54-55).

the tapes to the jury.  If questioned about the deleted tapes, she could have testified, as she did in the hearing following the punishment phase of trial, that she heard no exculpatory information on the other recorded calls.  Furthermore, in light of the incriminating statements that were admitted by agreement during trial, petitioner fails to show that the outcome of the trial would have been different if Faden had presented the details raised in his habeas proceedings to the jury without supporting evidence.

Accordingly, petitioner fails to overcome his burden under the AEDPA with respect to this ineffective assistance of counsel claim.

### e. Conspiracy

Petitioner contends that defense counsel Faden conspired with the prosecution to keep the truth from the jury by not acknowledging relevant information regarding complainant's phone calls, letters, greeting cards, and visitation to petitioner while he was in jail and by not disclosing the non-prosecution affidavit.   (Docket Entries No.4, page 12; No.33, page 8).  Petitioner contends that Faden's actions constitute a constructive denial of counsel; therefore, prejudice should be presumed.  (Docket Entry No.33, page 8).  Petitioner states no facts to show any kind of agreement between defense counsel and the prosecutor to withhold such evidence or that such evidence even existed.  Petitioner's conspiracy claim is conclusory and therefore, subject to dismissal.

### 4. Post Judgment

Petitioner complains that attorney Faden, who also represented him on appeal, rendered constitutionally ineffective assistance of counsel by failing to raise the exculpatory phone call issue on appeal.  (Docket Entry No.4, page 5).  He also contends that Faden gave him

erroneous advice to withdraw a habeas application and request for a hearing on the deleted tapes, which were filed during the pendency of the appeal. (*Id.*).

a. Appeal

"'Persons convicted of a crime are entitled to receive effective assistance of counsel in their first appeal of right," but counsel is not required to raise every nonfrivolous issue." *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001) (quoting *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)). In addition to the *Strickland* requirements of deficient performance and prejudice, petitioner "must how that the failure to raise the issue on appeal rendered the entire proceedings, trial and appeal fundamentally unfair." *Id.*

The state habeas courts found that petitioner "failed to prove his allegation of deficient performance in failing to bring out on direct appeal the evidence trial counsel allegedly had and heard himself." (Docket Entry No.25-10, page 18). Petitioner proffers nothing to rebut this finding. As previously noted, petitioner did not reveal the details of the specific conversation at issue during trial; he testified that the deleted recording would show that complainant fabricated the charge out of jealousy. Faden complained on direct appeal that the State withheld exculpatory evidence with respect to the deleted tapes. *Clark v. State*, 2008 WL 5441877 at * 4-5. Although he preserved error for appellate review with respect to the missing recording, he did not preserve error as to the specific conversation that petitioner now alleges in post-judgment proceedings. *See* Tex. R. App. P. 33.1 (requiring objection at trial to preserve error for appellate review). Therefore, addressing the specific contents of the purported three-way phone call on appeal would have been frivolous.

b. State Habeas Application

Petitioner contends that Faden erroneously advised him to withdraw his first state habeas application and request for a hearing on newly discovered evidence until after the disposition of his appeal; consequently, Faden prevented him from introducing newly discovered evidence.  (Docket Entries No.1, page 11; No.33, page7).  The state habeas courts found that while petitioner's appeal was pending, "a hearing was held on June 23, 2008, on applicant's motion "to advance on docket petition for writ of habeas corpus seeking to dismiss state appointed counsel and to appoint counsel[,]" which the state district court construed "as a post-conviction application for writ of habeas corpus."  (Docket Entry No.25-10, page 18).  The state habeas courts also found that the Court's file showed that Attorney Faden discussed the motion with petitioner, the state district court questioned petitioner and gave him an opportunity to ask questions but he did not, and that the motion was withdrawn.  (*Id*., page 18-19).  The state habeas courts further found that based on Faden's affidavit, there was no new evidence because phone calls, other than those to which Brooks testified, had not been downloaded and were not preserved.  (*Id.*, page 19).  The state habeas courts held, "Applicant fails to prove his allegation of deficient performance in counsel having given Applicant bad advice to pass on placing alleged new evidence on the record at the hearing held June 23, 2008."  (*Id*.).

Petitioner proffers no new evidence and nothing to rebut the state habeas courts's findings.  Accordingly, he fails to meet his burden under the AEDPA

III. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).   On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).   A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability from this decision will not issue.

<u>IV. CONCLUSION</u>

Finding no unreasonable application of clearly established federal law in the record of the state proceedings, the Court ORDERS the following:

1.   Respondent's motion for summary judgment (Docket Entry No.28) is GRANTED.

2.   Petitioner's motion to withdraw unexhausted claims of prosecutorial misconduct (Docket Entry No.34) is GRANTED. All claims of prosecutorial misconduct are withdrawn and dismissed from this case.

3.   Petitioner's petition for federal habeas relief is DENIED.

4.   A certificate of appealability is DENIED.

5.      All other pending motions are DENIED.

6.      This habeas action is DISMISSED with prejudice.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 18th day of May, 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE